*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
April 30, 2020

v

No. 342467
Wayne Circuit Court
LC No. 16-006937-01-FC

ALLEN ATKINS, also known as
ALLEN AIKENS,

Defendant-Appellant.

Before: MURRAY, C.J., and RONAYNE KRAUSE and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his conviction of second-degree murder, MCL 750.317,[1] for which the trial court sentenced him, as a second habitual offender, MCL 769.10, to serve 150 to 250 months' imprisonment. We affirm. This appeal is being decided without oral argument under MCR 7.214(E)(1).

## I. FACTS

In July 2016, defendant was visiting his former adoptive mother, Emily Miller, for the first time in three years when a conflagration erupted between defendant and Miller's daughter, Dominique Conaway. The two struggled over a knife, and Conaway died after suffering multiple stab wounds. Defendant did not deny killing Conaway, but maintained that he did so in self-defense.

At trial, defendant testified that Conaway, who was approximately 23 years older than he, tried to kill him on two occasions during his childhood—once when he was five years old, and again when he was nine years old. Defendant elaborated that, on his fifth birthday, Conaway

---

[1] Defendant was charged with first-degree murder, MCL 750.316, but the jury found him not guilty of that offense, and instead found him guilty of the lesser-included offense of second-degree murder.

-1-

"cooked food" for the occasion, and defendant was later taken to a hospital to have his stomach pumped because he had "suffered from food poisoning." When defendant was nine years old, he used a "vaporizer" for a medical condition and ended up "in a coma for a week," and Miller explained to him that Conaway had "poured anti-freeze" into the vaporizer.

Defendant further testified that when he was 10 years old he "got took [sic] away" from Miller as the result of a "child abuse scandal that made nationwide news." According to Miller, defendant "went into the system" when he was 10 years old, and she confirmed that defendant was "removed" from her home by Child Protective Services.[2] Miller stated that defendant returned to live with her when he was 14, and remained with her "[o]ff and on until he was twenty, [or] twenty-three [years old]."

On appeal, appellate counsel argues that defendant is entitled to a new trial because he was convicted without the benefit of the effective assistance of counsel. Defendant personally, in his initial and supplemental Standard 4 briefs, offers his own argument in support of his assertion that he experienced the ineffective assistance of trial counsel, as well as that of assistance of appellate counsel.[3]

## II. GENERAL RULES AND STANDARDS OF REVIEW

"Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012), citing US Const, Am VI and Const 1963, art 1, § 20. Generally, to obtain a new trial for that reason, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51.

"Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases. There is accordingly a strong presumption of effective assistance of counsel." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008) (citations omitted). "This Court will not substitute its judgment for that of defense counsel or review decisions with the benefit of hindsight." *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012).

---

[2] This Court affirmed the termination of Miller's parental rights in *In re Miller*, unpublished per curiam opinion of the Court of Appeals, issued August 7, 2001 (Docket No. 226888). The caption for that opinion reflects that, at the time, defendant used the name Lesingtin Miller.

[3] A *Ginther* hearing was held in response to appellate counsel's argument. *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). Defendant, in his supplemental Standard 4 brief, requested a second *Ginther* hearing, to develop his claims of ineffective assistance of both trial and appellate counsel. This Court denied the latter motion in an unpublished order. *People v Atkins*, unpublished order of the Court of Appeals, entered February 27, 2020 (Docket No. 342467).

That a particular strategy ultimately failed does not demonstrate that a defendant was denied the effective assistance of counsel. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Speculation that a different outcome may have occurred is not sufficient to establish prejudice. *People v Avant*, 235 Mich App 499, 508; 597 NW2d 864 (1999).

" 'Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law.' Findings on questions of fact are reviewed for clear error, while rulings on questions of constitutional law are reviewed de novo." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007), quoting *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). However, where "an evidentiary hearing on defendant's claims of ineffective assistance has not been held, this Court's review is limited to mistakes apparent on the record." *People v Scott*, 275 Mich App 521, 526; 739 NW2d 702 (2007).

"[T]he test for ineffective assistance of appellate counsel is the same as that applicable to a claim of ineffective assistance of trial counsel." *People v Uphaus*, 278 Mich App 174, 186; 748 NW2d 899 (2008).

## III. APPELLATE COUNSEL'S ARGUMENTS

Appellate counsel contends that defense counsel was ineffective for failing to ensure that the prospective jurors were asked sufficiently probative questions during voir dire regarding potential biases or scheduling conflicts.

"A defendant tried by jury has a right to a fair and impartial jury." *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). "In voir dire . . . potential jurors are questioned in an effort to uncover any bias they may have that could prevent them from fairly deciding the case." *People v Tyburski*, 445 Mich 606, 618; 518 NW2d 441 (1994). "The trial court has discretion in both the scope and the conduct of voir dire." *Id*. at 619. A prospective juror "may be excused for cause based on a demonstrated bias for or against a party, if the venireman shows a state of mind that will prevent the juror from rendering a just verdict, or if the venireman has opinions that would improperly influence the juror's verdict." *People v Williams*, 241 Mich App 519, 521; 616 NW2d 710 (2000).

During voir dire, the trial court questioned the prospective jurors, and permitted the attorneys to pose questions as well. Although the court asked numerous questions, or made numerous statements, that were not relevant to voir dire, the court did ask the prospective jurors if they recognized the names of the witnesses "or any of the people" that the prospective jurors were introduced to during voir dire. The prosecuting attorney asked the prospective jurors if they lived in Wayne County, were citizens of the United States, were felons, had religious objections to judging another person, had potential scheduling conflicts, had been the victim of a crime or were closely related to such a victim, or should not serve on a jury for any other reason.

In response to the prosecuting attorney's question about scheduling conflicts, one prospective juror stated that he was "flying to Alaska" on "Sunday," and thus, a trial length of "four days" worked for him. The trial court noted that the trial might run behind schedule, and asked the juror if he would be "good all [that] week," he replied, "Absolutely." The trial in fact ended after only three days.

Appellate counsel asserts that the trial court asked the prospective jurors rhetorical and informal questions that were not sufficiently probative to determine if they were impartial, and that defense counsel failed to fill some gaps. However, although defense counsel did not personally ask the prospective jurors many specific probative questions, the prosecuting attorney and the trial court extensively questioned them regarding their impartiality and availability. The defense had nothing to gain from posing duplicative questions. Moreover, no specific questions were identified that the court or defense counsel should have posed, but did not. See *People v Orlewicz*, 293 Mich App 96, 105; 809 NW2d 194 (2011). The performance of defendant's trial attorney was not deficient in this regard.

Appellate counsel also argues that trial counsel should have struck the juror for cause because he indicated that he was available until his vacation was set to begin. But the juror clearly communicated his scheduling concern to the trial court, and confirmed that he would be able to serve even if the trial lasted one day beyond the predicted four-day length. In fact, as noted, the trial lasted only three days. Other than noting the juror's announced vacation plans, defendant fails to explain why trial counsel should have asked that the juror be struck for cause, or how the decision to retain the juror negatively impacted the trial or verdict.

Trial counsel was also not ineffective when he failed to object to the trial court's decision to not impanel alternate jurors. MCL 768.18 provides in pertinent part as follows:

> Any judge of a court of record in this state about to try a felony case which is likely to be protracted, may order a jury impaneled of not to exceed 14 members, who shall have the same qualifications and shall be impaneled in the same manner as is, or may be, provided by law for impaneling juries in such courts.

Accordingly, "broad discretion is given to the trial judge to empanel a jury of not less than twelve but not more than fourteen, with further discretion to reduce the number to twelve." *People v Harvey*, 167 Mich App 734, 745; 423 NW2d 335 (1988). See also MCR 6.411.

At the close of voir dire the trial court indicated it was impaneling a jury of 12. Appellate counsel asserts that defendant's trial attorney's decision to not object to the lack of alternates resulted in increased time constraints and pressure upon the jury, especially in light of one juror's upcoming vacation. However, defendant's speculation about the time pressures the jurors felt is merely that, particularly because the trial concluded one day ahead of its estimated duration of four days, and even that estimate comported with the juror's schedule. Because defendant merely speculates that a different result might have occurred had defense counsel objected, defendant has failed to show that counsel's performance was constitutionally defective in this matter. See *Avant*, 235 Mich App at 508.

We likewise reject appellate counsel's argument that trial counsel was ineffective for failing to argue that defendant was entitled to be present at the postconviction hearing where the trial court examined a juror over her concerns about the deliberations that had taken place.

"A defendant has a right to be present during the voir dire, selection of and subsequent challenges to the jury, presentation of evidence, summation of counsel, instructions to the jury, rendition of the verdict, imposition of sentence, and any other stage of trial where the defendant's substantial rights might be adversely affected." *People v Mallory*, 421 Mich 229, 247; 365 NW2d 673 (1984). "However, the test for whether defendant's absence from a part of his trial requires reversal of his conviction is whether there was any reasonable possibility that defendant was prejudiced by his absence." *People v Armstrong*, 212 Mich App 121, 129; 536 NW2d 789 (1995).

Here, shortly after the trial, a female juror sent the trial court an e-mail stating that she wished the jury had waited another day before reaching its verdict because she had encouraged her fellow jurors to use the internet to verify if defendant's testimony about Miller's history of child abuse was true. This juror further explained that she found such information which confirmed the accuracy of defendant's account, and she expressed frustration at how the jury conducted its deliberations.

The trial court responded with a hearing, where the juror testified that she sent the e-mail because she "felt very guilty that we did not give [defendant] a fair deliberation," and that she "could have at least made them come back another day." She further expressed regret that the jury had not taken more time to deliberate, and opined that the other jurors had unfairly refused to consider defendant's testimony. This juror clarified that she "didn't have a chance" to present her independent information regarding Miller's history of child abuse to the other jurors, and that she "found the news coverage" after she went home following the jury's delivery of its verdict. Defense counsel was present during the hearing, but the trial court exclusively conducted the examination of the juror, and only at the close of the hearing asked counsel if there was "anything else." Neither defendant nor the prosecutor were present.

During the later evidentiary hearing to develop appellate counsel's argument of ineffective assistance of counsel, see *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973), defendant's trial attorney testified that he received "an invitation" to be present at the hearing, but understood that, despite his continuing formal status as defendant's attorney, his role during the hearing was to "appear as an observer" while the trial judge maintained "complete control of the court room." Defense counsel admitted that he did not discuss the hearing over the juror's concerns with defendant, and explained that he "saw nothing in there which really dramatically" warranted defendant's attention, and thus simply continued to prepare for sentencing. Defense counsel further noted that the juror did not indicate that she actually brought any outside information into the jury room.

It is not apparent that trial counsel should have objected to defendant not being present during that hearing, nor is it apparent that the trial court's examination of the juror constituted a stage of trial potentially affecting his substantial rights. Likewise, it is not clear how defendant's absence resulted in any prejudice.

Trial counsel was also not ineffective for not having moved the trial court for a new trial on the basis of the juror's postconviction testimony.

> Generally, jurors may not impeach their own verdict by subsequent affidavits showing misconduct in the jury room. As the Court of Appeals has previously noted, once a jury has been polled and discharged, its members may not challenge mistakes or misconduct inherent in the verdict. Rather, oral testimony or affidavits may only be received on extraneous or outside errors, such as undue influence by outside parties. As the United States Supreme Court has explained, the distinction between an external influence and inherent misconduct is not based on the location of the wrong, e.g., distinguished on the basis whether the "irregularity" occurred inside or outside the jury room. Rather, the nature of the allegation determines whether the allegation is intrinsic to the jury's deliberative process or whether it is an outside or extraneous influence. In examining these affidavits, a trial court should not investigate their subjective content, but limit its factual inquiry to determining the extent to which the jurors saw or discussed the extrinsic evidence. [*Budzyn*, 456 Mich at 91 (citations omitted).]

Further, "[a]ny conduct, even if misguided, that is inherent in the deliberative process is not subject to challenge or review." *People v Fletcher*, 260 Mich App 531, 540; 679 NW2d 127 (2004).

In the course of deliberations, jurors may properly consider only "the evidence that is presented to them in open court. Where the jury considers extraneous facts not introduced in evidence, this deprives a defendant of his rights of confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment." *Budzyn*, 456 Mich at 88 (citations omitted). "In order to establish that the extrinsic influence was error requiring reversal, the defendant must initially prove two points. First, . . . that the jury was exposed to extraneous influences. Second, . . . that these extraneous influences created a real and substantial possibility that they could have affected the jury's verdict." *Id.* at 88-89 (citations omitted).

Here, the juror expressed her frustration that the other jurors did not believe defendant's testimony, and her belief that the other jurors simply wanted to reach a verdict quickly for such reasons as a grandchild's preschool graduation, the need "to drink," or the need "to pack" for a scheduled trip. She also reported that two jurors "got up and stood over" her, but added that she "didn't feel like they were trying to be aggressive." Trial counsel was not ineffective for not having sought a new trial on the basis of the juror's testimony. No extraneous or outside errors affected the jury's deliberations. Indeed, although the juror encouraged the other jurors to consider extraneous evidence by conducting their own internet inquiries, neither she nor they had a chance to do so before the jury reached and delivered its verdict. Because only mistakes or misconduct of the sort that is inherent in the verdict were described, see *Budzyn*, 456 Mich at 91, trial counsel would not likely have succeeded had he requested a new trial on this basis. Again, "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201.

Alternatively, defense counsel had sound strategic reasons for declining to pursue a new trial. See *Unger*, 278 Mich App at 242. During the *Ginther* hearing, defendant's trial counsel testified that his "sense" was that defendant was "pleased" with the jury's verdict, and that a new

trial "could have resulted in a less-favorable verdict and possibly even a less-favorable sentencing than what [defendant] did, in fact, receive." Counsel was not ineffective for preserving defendant's avoidance of a conviction of, and thus sentence for, first-degree murder rather than risk that result as a consequence of seeking a new trial.

## VI. DEFENDANT'S STANDARD 4 ARGUMENTS

In his Standard 4 briefs defendant takes issue with the performances of both trial court and appellate counsel. Defendant attacks them collectively on the ground that they failed to raise claims regarding perjury at trial resulting from government corruption. But the "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel," *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999), and defendant fails to show that any witness committed perjury, let alone that a witness did so as part of some governmental conspiracy.

"[A] willfully false statement about *any* matter or thing concerning which an oath was authorized or required falls within the statutory definition of perjury and thus may be charged as perjury if a prosecutor so chooses." *People v Lively*, 470 Mich 248, 254; 680 NW2d 878 (2004), citing MCL 750.423. Defendant attributes perjurious testimony to a police witness, and to his former adoptive mother, but nothing submitted by defendant comes close to establishing that perjury occurred during trial. Accordingly, we reject his argument of ineffective assistance of counsel predicated on perjury.

### A. APPELLATE COUNSEL'S PERFORMANCE

Defendant argues that appellate counsel was ineffective because her request under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*, to the Detroit Police Department on behalf of defendant, was denied. During trial, the prosecution stipulated that Conaway had a valid concealed pistol license on the day she died. According to defendant's supplemental Standard 4 Brief, the FOIA request pertained to that license. But defendant does not explain how the information sought through FOIA might have had more than the most tangential bearing on his appeal, or why appellate counsel's performance fell below an objective standard of reasonableness for having failed to persuade the Detroit police to provide the requested information. Indeed, under MCL 28.421b(1), "[f]irearms records are confidential, are not subject to disclosure under the freedom of information act . . . and shall not be disclosed to any person, except as otherwise provided by this section."

Defendant attacks appellate counsel's performance in connection with the *Ginther* hearing on the grounds that appellate counsel failed to place evidence on the record regarding the juror's concerns about the jury's verdict, did not call four of the five witnesses listed in defendant's motion, failed to effectively examine trial counsel, and did not present any oral argument.

Concerning defendant's objections to appellate counsel's choice of witness to call, and to the extent to which appellate counsel examined trial counsel, "[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy," and "[t]his Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). Defendant points out that he had proposed five

witnesses: himself, trial counsel, the prosecuting attorney, and the two aforementioned jurors, but that defense counsel was the only witness called. However, defendant does not identify the substance of what the other listed witnesses would have testified about, thus bringing to light no missed opportunities. Similarly, defendant provides no elaboration concerning why the examination of trial counsel was deficient, including by specifying questions that appellate counsel might gainfully have asked, but did not. For these reasons, defendant has failed to overcome the strong presumption that appellate counsel employed a sound strategy when she called only defendant's trial counsel as a witness at the *Ginther* hearing, or with her scope of examination of that witness.

Defendant further protests that appellate counsel did not present oral argument reflecting the claims he raised in his motion for the *Ginther* hearing. But at the end of that hearing, the parties and the trial court agreed that the parties would provide additional written advocacy to the court, and the court indicated it was "capable of reading and making a decision without oral argument." Appellate counsel thus properly refrained from offering oral arguments.

Defendant further challenges appellate counsel's performance on the ground that she should have moved this Court to strike the prosecution's brief on appeal for including false or otherwise misleading statements. Defendant argues that the prosecution's brief incorrectly indicates that Conaway was defendant's legal sister despite the termination of Miller's parental rights to defendant,[4] and that defendant washed a knife that was used as the murder weapon.[5] But defendant offers no argument concerning how his minor disagreements with factual assertions in the prosecution's brief expose a failure to "substantially comply" with MCR 7.212. Even assuming, without deciding, that defendant has correctly identified factual inaccuracies in the prosecution's brief, defendant fails to establish that the brief should have been stricken as a nonconforming one.

The remaining complaints about appellate counsel's performance involve the latter's disinclination to raise the additional challenges to trial court's performance of which defendant makes issue in his pro se briefing. However, "appellate counsel's decision to winnow out weaker arguments and focus on those more likely to prevail is not evidence of ineffective assistance. Nor is the failure to assert all arguable claims sufficient to overcome the presumption that counsel functioned as a reasonable appellate attorney in selecting the issues presented." *People v Reed*, 449 Mich 375, 391; 535 NW2d 496 (1995) (citation omitted). "It is only when a defendant can

_____

[4] Defendant apparently suggests that, because Miller ceased to be his adoptive mother when her parental rights to him were terminated, Miller's daughter, Conaway, thus ceased to be defendant's adoptive, or legal, sister.

[5] The prosecution's brief on appeal asserts that defendant washed the knife used to kill Conaway before he was arrested. However, that brief contains references to two separate knives that were found about Miller's home when the police investigated Conaway's death: a bent knife was found on the porch, and a second knife that was found in a kitchen drawer that had no notable features. During closing arguments, the prosecuting attorney did not argue that either knife was the specific weapon used to murder Conaway, but did note that defendant's testimony included the admission that he used a knife to kill Conaway.

demonstrate that a single egregious error, or combination of minor errors, caused counsel's overall performance to fall below the level guaranteed by the Sixth Amendment that defendant has fulfilled the cause prong of the inquiry." *Id*. at 393 n 14. Moreover, when a defendant presents an argument on appeal pro se that was not advanced by the defendant's appellate counsel, any such failure on the latter's part is generally rendered "insignificant." *People v Pratt*, 254 Mich App 425, 430-431; 656 NW2d 866 (2002).

## B. TRIAL COUNSEL'S PERFORMANCE

Defendant argues that defense counsel should have sought discovery of Miller's personal documents and records. "Criminal defendants do not have general rights to discovery." *People v Stanaway*, 446 Mich 643, 680; 521 NW2d 557 (1994). "Discovery in criminal cases, however, is left to the discretion of the trial court," and discovery may be ordered in criminal cases "when, in the sound discretion of the trial judge, the thing to be inspected is admissible in evidence and a failure of justice may result from its suppression." *Id*. at 680 (quotation marks and citation omitted).

According to defendant, trial counsel should have issued a subpoena duces tecum to Miller to obtain Miller's personal journals and records, and also requested an *in camera* inspection of those documents, on the grounds that those personal effects might contain information corroborating defendant's asseretion that Conaway attempted to kill defendant with the assistance of a hired assassin after defendant threw a mixture of apple juice and urine at Conaway. Defendant also contends that trial counsel should have asked Miller to surrender any mail in her possession that belonged to defendant, on the ground that defendant could have used that mail to identify potential witnesses. But defendant provides no record support for seeking such discovery, and thus fails to show that the trial court would have granted any such requests. Defendant brings to light at most that trial counsel declined to pursue discovery as a means of undertaking a fishing expedition. That does not constitute ineffective assistance of counsel.

The next argument is that trial counsel was ineffective for failing to properly investigate defendant's history as a victim of child abuse. "Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). "A substantial defense is one that might have made a difference in the outcome of the trial." *Id*. (quotation marks and citation omitted). "An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). "In general, the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Id*. (quotation marks and citation omitted).

Defendant argues that trial counsel failed to properly investigate his history as a victim of child abuse even though Miller's history of committing child abuse, and Conaway's alleged attempts to kill him as a child, were presented during trial. Defendant maintains that additional investigation in these regards would have enabled defense counsel better to show that Conaway shared Miller's propensity toward child abuse. But defendant cites no authority in support of his assertion that further evidence on these issues would have been admissible for that purpose, and offers only speculation to the effect that such further development of presumably his self-defense theory might have changed the outcome. Speculation of that sort does not constitute an actionable

showing of prejudice. See *Avant*, 235 Mich App at 508. Because defendant fails to show the additional evidence he suggests that trial counsel should have sought would have been admissible, and offers only speculation on how such additional evidence might have changed the result, this argument must fail.[6]

Affirmed.

/s/ Christopher M. Murray
/s/ Amy Ronayne Krause
/s/ Jonathan Tukel

---

[6] Defendant has not established that he had the right to the appointment of an expert to assist with his defense. Defendant neither identifies any potential expert for this purpose, nor does he specify the pertinent subject matter. Defendant has failed to establish any deficiency in defense counsel's performance for want of an attempt to secure the assistance of an expert.